UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DON RICHARD HANSEN,

    Plaintiff,

v.                          CASE NO. 8:16-cv-646-T-27MAP

NANCY BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the Commissioner's decision denying his claim for disability insurance benefits (DIB). He makes two arguments: the ALJ improperly discredited a medical opinion of Plaintiff's treating physician, Dr. Syed Hasan; and the ALJ failed to articulate good cause for giving great weight to a consultative examiner, Dr. Antonek. After considering the record, I agree with Plaintiff on both arguments. Accordingly, I recommend that the Court remand the Commissioner's decision for further proceedings.[1]

    *A. Background*

Plaintiff, who was 49 years old at the time his application was filed, did not complete high school and has past relevant work as a metal fabricator. He alleges he has been unable to work since October 1, 2007, due to stomach pain, neck and shoulder pain, hernias, and

---

[1] This matter was referred to me under Local Rule 6.01(c)(21).

herniated and bulging disks. The ALJ found his degenerative disc disease, chronic liver disease and affective disorder to be severe. Nonetheless, the ALJ concluded with aid of vocational expert that the impairments did not prohibit him from doing work in the national economy. Plaintiff administratively appealed, and the Appeals Council denied review. With ALJ's decision being the Commissioner's final one, Plaintiff filed this action seeking judicial review.

### B. Standard of Review

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one

that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

  C.  Discussion

Medical opinions are "statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor. *Id.*; *see also* 20 C.F.R. § 404.1527(c). Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialists physicians. 20 C.F.R. § 404.1527(c)(1-5).

    *1. Treating Physician Dr. Hasan's Opinion*

4

Dr. Hasan, a general internist, saw Plaintiff numerous times from 2011 to 2013. Plaintiff often complained of back and neck pain, for which Dr. Hasan prescribed medication (*see e.g.,* R. 372, 373, 375). In an August 14, 2013, medical source statement, Dr. Hasan opined that Plaintiff suffered from back and neck pain and restricted neck movement (R. 440). He stated that Plaintiff could not work an 8-hour day, as he could not be sitting, standing, or walking for more than two hours each in a work day (*id.*). But the ALJ gave Dr. Hasan's opinion little weight, stating that "a majority of the objective medical evidence does not support it" (R. 28). The ALJ concluded instead that Plaintiff could stand or walk for six hours in an eight hour work day (R. 24).

The evidence in the record concerning Plaintiff's back and neck pain is as follows: 2011 MRIs revealed Plaintiff suffered from straightening of the lordotic curvature, degenerative disk disease (at C4-C5, C5-C6, L3-4, L4-5, and L5-S1) and severe neuroforaminal stenosis (R. 291, 294, 297-98, 324-28). Plaintiff underwent physical therapy following the MRI, which improved his lower back pain (R. 331, 332). However, any reprieve was temporary. In 2013, Plaintiff's back and neck pain brought him to the emergency room (R. 375). There, an MRI revealed that Plaintiff's degenerative disc disease had worsened in his lower back (L5-S1) to the point that it was pinching his nerves (R. 364-365). Finally, in March 2014, a physician noted that Plaintiff had moderate tenderness and spasms along his spine and in his upper back and that Plaintiff's flexion and extension of his cervical spine and lumbosacral spine were restricted and painful (R. 552). Plaintiff, however, did not experience pain when performing a straight leg raise and he had a normal gait (*id.*).

5

The objective evidence overwhelmingly shows that Plaintiff suffered from significant spinal abnormalities that would be expected to cause pain and limit activity. Thus, there is not substantial evidence to support the ALJ's statement that "a majority of the objective medical evidence does not support" Dr. Hasan's opinion. On remand, the ALJ must reconsider Dr. Hasan's medical source statement and either assign it greater weight or articulate valid good cause for disregarding it.

### 2. Medical Examiner Dr. Antonek's Opinion

Dr. Antonek examined Plaintiff in June 2013 (R. 435). He observed that Plaintiff had a "depressed mood and affect" (*id.*). Dr. Antonek performed a "mini mental status exam" on which Plaintiff scored in the "high or normal range" of functioning, although Plaintiff experienced difficulties with immediate recall (R. 437). Dr. Antonek, however, found that Plaintiff was alcohol dependent (*id.*). He recommended Plaintiff receive individual psychotherapy, consult with a psychiatrist concerning medications, participate in AA, and receive substance abuse education (*id.*). Dr. Antonek concluded that Plaintiff's "emotional and psychological functioning, given compliance and follow through with the above recommendations, currently appears poor" (*id.*).

The ALJ interpreted Dr. Antonek's conclusion to mean that Plaintiff can improve his mental functioning with regular therapy and medication (R. 28). He proceeded to give significant weight to Dr. Antonek's opinion, explaining that the majority of the objective medical evidence supports it and Dr. Antonek personally and thoroughly examined Plaintiff and based his opinion on objective tests (*id.*).

6

The medical evidence in the record, however, fails to support Dr. Antonek's conclusion. Plaintiff received outpatient treatment for anxiety and depression at BayCare Behavioral Health beginning in February 2013 (R. 390, 392, 479). In May 2013, Plaintiff reported he still felt sad, was sleeping poorly, and had a bad temper (R. 470). In August 2013, Plaintiff's therapist described his psychological state as "suboptimal" (R. 468; *see also* R. 474). In September 2013, Plaintiff reported that his mood had improved and Zoloft had helped keep him calmer (R. 467). One month later, however, he reported his depression was worse and that he still experienced anger "out of the blue" (R. 491). Plaintiff changed therapists in November 2013 (R. 494). He claimed that he still had self-esteem issues, depression, sleeping problems, and temper issues (*id.*). The most recent mental health records (January 2014) reflect that, despite being compliant with his medications and regularly attending therapy sessions, Plaintiff "continue[d] to experience chronic depressive symptoms which include irritability, sleep disturbance, anhedonia, fatigue, and low self-esteem" (R. 541, 543).

Thus, the medical evidence shows that Plaintiff's mental state failed to improve with regular therapy sessions and medication. Accordingly, the ALJ erred by failing to articulate a valid reason for giving significant weight to Dr. Antonek's opinion.

*D. Conclusion*

I recommend

1. The decision of the Commissioner be REVERSED and the case be REMANDED for further administrative proceedings; and

2. Judgment be entered in favor of Plaintiff.

IT IS SO REPORTED at Tampa, Florida on June 29, 2017.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.